**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MITCHELL SIMPSON, | ) | |
| | ) | |
| | ) | Civil Action No.  2:16-cv-00160 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Arthur J. Schwab |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| S.G.T. MR. BLACK, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that Plaintiff's First Amendment retaliation claim, based on the loss of his prison job, and his Eighth Amendment failure to protect claim be dismissed without prejudice, and that Plaintiff be granted leave to file an amended complaint as to those claims.  It is further recommended that Plaintiff's Fourteenth Amendment due process and equal protection claims, as well as his Eighth Amendment conditions of confinement claim, be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.    REPORT

Plaintiff Mitchell Simpson commenced this civil action by filing a Motion for Leave to Proceed In Forma Pauperis (ECF No. 1) on February 12, 2016, which was subsequently granted on March 1, 2016 (ECF No. 2).  The Clerk of Court docketed Plaintiff's Complaint (ECF No. 3) later that same day.    Plaintiff has been incarcerated at SCI-Fayette since the commencement of this action.  He asserts violations of his rights

under the First, Eighth, and Fourteenth Amendments against Defendant, S.G.T. Mr.

Black  ("Sgt. Black"), an employee of the Pennsylvania Department of Corrections.

This Court must review Plaintiff's Complaint in accordance with the

amendments promulgated in the Prison Litigation Reform Act ("PLRA"), Pub. L. No.

104-134, 110 Stat. 1321 (1996).  Under the PLRA, courts have an affirmative duty to

screen and review prisoner complaints filed by inmates who seek leave to proceed *in

forma pauperis*.  28 U.S.C. § 1915A.  Federal courts are granted the authority to *sua sponte*

dismiss claims in *in forma pauperis* proceedings if the court determines that a claim is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§

1915A, 1915(e)(2)(B)(i)-(iii).  Plaintiff requested and has been granted leave to proceed *in

forma pauperis*.  Thus, his allegations must be reviewed in accordance with the directives

provided in the PLRA.

### A.    Legal Standard

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings

and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it

by name."  *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)(quoting *Holley v. Dep't of

Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* *Nami v. Fauver*, 82 F.3d 63,

65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief

if their complaint sufficiently alleges deprivation of any right secured by the

Constitution." (quoting *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)))).

However, there are limits to the court's procedural flexibility — "pro se litigants still

2

must allege sufficient facts in their complaints to support a claim. . . they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

A complaint is frivolous if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

A complaint that fails to state a claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)[1] if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). As the Supreme Court held in *Twombly*, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

---

[1] In reviewing complaints under 28 U.S.C. §1915(e) and §1915A, a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)); *see also Robinson v. Phelps*, 946 F.Supp. 2d 354, 361 (D. Del. 2013) (finding that the legal standard for dismissing a complaint under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the Rule 12(b)(6) legal standard). .

### B.     Factual Background

Plaintiff alleges that on December 1, 2015, he talked to Defendant Sgt. Black and informed him that he and his cellmate were not getting along with each other.  *See* ECF No. 3 at 2.  Plaintiff alleges that Sgt. Black responded by telling him to "do what you got to do."  *Id.*  Plaintiff thought that Sgt. Black's response was "mess[ed] up" – a S.G.T. telling a[n] inmate to hurt another inmate."  Then Plaintiff asked to see a lieutenant so that he could resolve the matter "firmly," but his request to see to a "higher authority" was denied.  *Id.*  Plaintiff went back to his cell and alleges that his cellmate tried to hurt him.  *Id.* at 2-3.  Sgt. Black wrote Plaintiff up for assaulting his cellmate, but Plaintiff claims he was defending himself.  Plaintiff further alleges that Sgt. Black did not see him assault "'No' Body."  *Id.* at 3.  Plaintiff was given 90 days in the hole for the assault on his cellmate.   Plaintiff contends that he exhausted his administrative remedies by filing a grievance which was denied.  *Id.* at 3.

Based on these allegations, Plaintiff claims that his constitutional rights under the First, Eighth, and Fourteenth Amendments have been violated.

For relief, Plaintiff requests money damages, as well as injunctive and declaratory relief.  Plaintiff states that this matter can be resolved by putting him back in his cell  on F Block 1014 and Z-coded F Block 1014 – cell, and by getting his job back.  *Id.* at 5.

C.    **Analysis**

1.    **First Amendment Retaliation Claim**

With regard to the alleged violation of his First Amendment rights, Plaintiff does not identify the basis for this claim.  Construing the allegations of the Complaint liberally, Plaintiff appears to be asserting a retaliation claim based on his allegation that he filed "a grievance about th[e] illegal acts of the prison staff, Sgt. Black, [and] now [he] is worse off because of the unsafe conditions[2]  and [he] lost [his] job that was [his] only income."  *See* ECF No. 3 at 4.

As this Court noted in *Miskovitch v. Hostoffer*, "in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action."  *Miskovitch v. Hostoffer*, 721 F.Supp. 2d 389, 395 (W.D.Pa. 2010) (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir.1997)).  At the motion to dismiss stage, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss[,]" but need only allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d

_____

[2] The unsafe conditions described by Plaintiff included dirty vents blowing out cold air and an electrical socket that is an open danger to his life.  *See* ECF No. 3 at 4.

224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)) (footnote omitted). Although the filing of a grievance clearly satisfies the first element, *see Carey v. Johnson,* Civ. A. No. 06-1578, 2008 WL 724101, *3 (W.D.Pa. Mar. 17, 2008) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981); *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995)), Plaintiff fails to allege any facts which raise a reasonable expectation that discovery will reveal the second and third elements.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second element by demonstrating that the adverse action "'was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.2000) (citing *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (internal quotation marks omitted). Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003), denying parole, transferring the inmate to a distant prison, and penalizing him financially, *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), and placing a prisoner in administrative custody, *Allah*, 229 F.3d at 225.

Here Plaintiff claims that he was subject to "unsafe conditions" consisting of dirty vents blowing cold air and an open electrical socket, and that he lost his prison job. As to the former, the purportedly "unsafe conditions" do not rise to the same level as the filing a misconduct report, transferring a prisoner or placing the prisoner in administrative custody, and therefore, are not sufficient to deter a person of ordinary firmness from filing a grievance. Indeed, Plaintiff does not allege how these conditions

endanger his life. Therefore, the Court concludes, as a matter of law, that the "unsafe conditions" alleged here do not constitute an adverse action as required to state a plausible retaliation claim under the First Amendment.

As to losing his prison job, the Court finds that although inmates do not possess a constitutional right to employment while in prison, *Carey,* 2008 WL 724101, at *9 ("It is well settled that prisoners have no inherent constitutional right to a prison job and no inherent constitutional right to wages for work performed while incarcerated.") (collecting cases); *see also Fidtler v. Pa. Dep't of Corr.,* 55 F. App'x 33, 35 (3d Cir. 2002) (citing *Bryan v. Werner,* 516 F.2d 233, 240 (3d Cir. 1975)), the threat of losing one's prison job may be sufficient to deter an inmate of ordinary firmness from filing a grievance, *cf. Watson v. Wetzel,* Civ. A. No. 11-281J, 2013 WL 501376, *8 (W.D.Pa. Jan. 9. 2013) ("[T]he refusal to reinstate a prisoner into his prison job may be sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights" under the First Amendment.); *Hill v.Blum,* 916 F.Supp. 470, 473-74 (E.D.Pa. 1996) (citation omitted) ("Although there is no right to a job or a particular position in a prison, prison officials cannot punish or retaliate against a prisoner who exercises his First Amendment rights by filing an administrative grievance . . ..").  Therefore, the Complaint sufficiently alleges an adverse action—the loss of a job—occurred here.

That does not end the inquiry, however, because the second element of a retaliation claim also requires the Plaintiff to show that he was subjected to the adverse action *by a state actor*.  Here Sgt. Black, the only Defendant, is admittedly a state actor. However, the Complaint is devoid of any allegations showing that Sgt. Black was the

one who terminated Plaintiff's job, or was personally involved in the termination decision.

It is well settled that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981) (other citation omitted)); *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201–02 (3d Cir.2000) (en banc)). A plaintiff must aver this personal involvement through allegations of participation, personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207. These allegations "must be made with appropriate particularity." *Id*. *See also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010) (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)) ("Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to 'demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue.'").

Here, Plaintiff alleges he put in a grievance about the illegal acts of Sgt. Black and now he is worse off because, inter alia, he lost his job that was his only income, and that

the grievance coordinator, Major Joseph F. Trempus, took Sgt. Black's side and denied his grievance. Compl., ECF No. 3 at 4. These allegations do not, in any way, implicate Sgt. Black's personal involvement in the termination of Plaintiff's job. Therefore, the Court finds that Plaintiff has failed to state a plausible retaliation claim against Sgt. Black based on the termination of his prison job. *Cf. Hill*, 916 F.Supp. at 474 (granting summary judgment on retaliation claim where evidence failed to show defendant was a member of team that removed inmate from his prison job or was otherwise involved in the termination decision). Accordingly, the Court recommends this claim be dismissed without prejudice. [3]

### 2.      Eighth Amendment Claim

The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted). Thus, the Eighth

---

[3] The Court recommends, however, that Plaintiff be given leave to amend his complaint to plead sufficient facts to show personal involvement by a state actor in terminating his job. In addition, Plaintiff will need to plead sufficient facts to show the third element of this retaliation claim. This element requires a plaintiff "to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 2013 WL 501376, at *9 (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); then citing *Krause v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997)). In other words, Plaintiff must name as defendants the state actors who were personally involved in the decision to terminate his job, provide dates to show the temporal proximity, if any, between the filing of his grievance and the loss of his job, and/or allege facts to show that the person(s) involved in the termination decision were antagonistic towards him.

Amendment's Cruel and Unusual Punishment's Clause does not apply until "after sentence and conviction." *Graham v. Connor*, 490 U.S. 386, 392 at n. 6 (1989). It imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations and internal quotations omitted).

### a.      Failure to Protect

Plaintiff has asserted an Eighth Amendment claim based on a failure to protect theory. Plaintiff alleges that Sgt. Black failed to protect him and keep him from harm, when Sgt. Black allegedly told Plaintiff to do what he had to do to work out his problem with his cellmate.

Not "every injury suffered by one prisoner at the hands of another . . . translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. However, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, to state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, *id.,* and (3) the official's deliberate indifference caused him harm, *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (citation omitted).

"Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

In the case at bar, Plaintiff does not appear to have alleged sufficient facts to raise above the speculative level a claim under the Eighth Amendment for failure to protect against Sgt. Black. Plaintiff alleges that he was not getting along with his cellmate and that he informed Sgt. Black of this. Sgt. Black allegedly responded by telling Plaintiff to "do what you got to do." Plaintiff interpreted Sgt. Black's response as telling an inmate to hurt another inmate. Dissatisfied with Sgt. Black's response, Plaintiff attempted to speak with a lieutenant, but was denied. Plaintiff returned to his cell and claims his cellmate tried to hurt him. Sgt. Black then wrote Plaintiff up for assaulting his cellmate, but Plaintiff claims he was defending himself.

Construing these allegations liberally in the light most favorable to Plaintiff, the Court finds that the Complaint fails to raise a reasonable expectation that discovery will reveal that (1) Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, and (2) the alleged deliberate indifference of Sgt. Black caused him harm. Alleging that he was forced to share a cell with an inmate with whom he was not

getting along, and that Sgt. Black refused to intervene, does not raise above the speculative level that such confinement constituted a "substantial risk of serious harm. It is common in the prison environment for cellmates not to get along. Absent some indication that a physical confrontation was about to occur, and none was alleged here, the Complaint does not plead facts from which it can be reasonably inferred that a substantial risk of serious harm existed. In addition, Plaintiff has not set forth any facts to show that he sustained any injuries as a result of any deliberate indifference on Sgt. Black's part[4]—Plaintiff merely alleges that his cellmate tried to hurt him when he returned to his cell. Accordingly, the Court recommends that Plaintiff's failure to protect claim be dismissed without prejudice. [5]

---

[4] Whether Sgt. Black's conduct constituted deliberate indifference for purposes of the Eighth Amendment raises issues of fact which cannot be decided at this stage of the litigation.

[5] In the exhibits to his Complaint, Plaintiff provides two Inmate's Request to Staff Member forms dated 1/6/16 and 1/26/16, respectively, directed to Superintendent Lane ("Inmate's Requests"). Exs. to Compl., ECF No. 3-1 at 4-9. In those Inmate's Requests, Plaintiff asks the superintendent why he has not responded to three previously submitted requests and informs the superintendent that he is responsible for the actions of his subordinates under a supervisory liability theory. First, plaintiff cannot proceed on a supervisory liability theory as it is not pled in his complaint and he has not named the superintendent as a defendant. Second, even if he had, his claim would still fail because no cause of action for supervisory liability exists where a supervisor first learns about the alleged unconstitutional conduct when a grievance is filed and fails to take action in response to the grievance. *See Simonton v. Tennis,* 437 F. App'x 60, 62 (3d Cir.2011) (citing *Rode*, 845 F.2d at 1207-08) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (holding that prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). *See also Watson,* 2013

### b. Conditions of Confinement Claim

Alternatively, Plaintiff's Complaint may be liberally construed to assert an Eighth Amendment conditions of confinement claim based on the purportedly "unsafe conditions" (dirty vents blowing cold air on him and exposure to an electrical socket which is an open danger to his life).  However, this claim lacks merit.

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement.  To succeed on an Eighth Amendment conditions of confinement claim, the inmate must demonstrate both an objective element – that the deprivation was sufficiently serious--and a subjective element – that the prison officials acted with a sufficiently culpable mind.  *Id.* at 298.  Prison conditions may objectively violate the Eighth Amendment proscription against cruel and unusual punishment when inmates are deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  Courts have held that those minimal necessities include provision for basic hygiene.  *See, e.g.*, *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a refusal to provide toothpaste, leading to bleeding gums and tooth decay stated an Eighth Amendment claim); *Young v. Quinlan*, 960 F.2d 351, 363 (3d Cir. 1992) (holding that requiring a prisoner to request permission to wash hands, receive toilet paper, or drink water stated an Eighth Amendment claim).

---

WL 501376, *4 (citing *Rode,* 845 F.2d at 1208 ("[P]ersonal knowledge of constitutional violations cannot be established solely as a result of addressing grievances.")

At least one court has found that it is doubtful a cold cell can be considered atypical or a significant hardship.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (It is questionable if having a cold cell or a toilet that backs up sometimes is really an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."), *implicitly overruled on other grounds by Edwards v. Balisok,* 520 U.S. 641 (1997). Other courts have found that conditions significantly more harsh than dirty vents blowing cold air do not constitute an Eighth Amendment violation.  *See, e.g., Peterkin v. Jeffes*, 855 F.2d 1021, 1026-28 (3d Cir. 1998) (holding that lack of significant airflow in the cells, which did not result in a manifestation of the development and spread of infectious respiratory disease or any other risk to inmate health, and sleeping on a dirty mattress on floor which did not result in any incidents of serious back problems or the transmission of disease causing organisms, did not make out an Eighth Amendment claim); *Blizzard v. Watson*, 892 F. Supp. 587, 591, 598 (D. Del. 1995) (citation and internal quotation omitted) (finding no Eighth Amendment violation where the conditions alleged by the inmates—toilets close to beds resulting in urine splashing on inmate lying in bed, low-calorie food, poor ventilation, and a broad allegation of denial of meaningful exercise—were "amorphous conditions which d[id] not indicate the deprivation of a particular human need" or pose a risk of serious harm); *Wilson v. Schomig*, 863 F. Supp. 789, 794-95 (N. D. Ill. 1994) (ruling that without a showing of physical harm, claim that inmate was forced to sleep on urine and feces-stained mattress in dirty, roach-infested, leaky cell was not enough to make out an Eighth Amendment claim).

Moreover, Plaintiff does not allege that he suffered any physical harm from being exposed to dirty vents blowing cold air.    As to his alleged exposure to an open electrical socket, Plaintiff has not alleged any facts as to when and where such exposure occurred or how it endangered his life.  Accordingly, Plaintiff has failed to allege sufficient facts which raise a reasonable expectation that discovery will reveal that he was deprived of the "minimal civilized measure of life's necessities."

Second, Plaintiff must also show that the prison authorities acted with "deliberate indifference" to the above describe conditions. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Plaintiff makes no such claims on the face of his Complaint; indeed, he made no allegation that he complained about these conditions while he was incarcerated.  As such, Plaintiff has also failed to raise a reasonable expectation that discovery will reveal that the prison officials acted with deliberate indifference to the alleged conditions.  Accordingly, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted under the Eighth Amendment based on "unsafe conditions," and therefore, the Court recommends that any such claim be dismissed with prejudice.

### 3.    Fourteenth Amendment Claim

As for the alleged violation of his Fourteenth Amendment rights, Plaintiff has asserted claims under the Due Process and Equal Protection Clauses.  The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1.

### a.   Due Process Claim

As to the alleged due process violation, Plaintiff contends that he was not provided an opportunity to present his side of the story with regard to the grievance he filed.  He alleges that the grievance coordinator only talked to Sgt. Black about the incident with his cellmate, but neither the grievance coordinator nor anyone else talked to him about the incident.  Compl., ECF No. 3 at 4.  By denying his grievance after hearing only Sgt. Black's side of the story, Plaintiff alleges that his constitutional rights under the Fourteenth Amendment were violated.  *Id.*

In analyzing any procedural due process claim of this type, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). Once the court determines that a protected property or liberty interest has been asserted, "the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  However, if the court determines that a protected liberty or property interest has not been stated, then it is not required to analyze what procedures were required to be followed when an alleged deprivation occurred.  *Evans v. Fanelli,* Civ. No. 1:CV-12-2385, 2013 WL 3049112, *4 (M.D.Pa. June 17, 2013).  Protected liberty or property interests generally arise either from the Due Process Clause or from some state law, rule or regulation. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (citing *Meachum v. Fano,* 427 U.S. 215, 223-227 (1976)), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Layton v. Beyer*, 953 F.2d 839, 845 (3d Cir.1992) (citations omitted).

Thus, the threshold question presented by Plaintiff's due process claim is whether Sgt. Black's actions impacted a constitutionally-protected liberty interest. The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Meachum, 427 U.S. at 224.* A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. *See Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973); see also Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003)* (A plaintiff's "procedural due process rights are triggered by deprivation of a legally cognizable liberty interest."). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, *Morrissey, 408 U.S. at 4*82, and the revocation of probation, *Gagnon, 411 U.S. at 782*. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g., Hewitt, 459 U.S. at 468; Layton, 953 F.2d at 845*. Moreover, an inmate does not have an inherent due process right to remain in or be transferred to any particular prison. *See Meachum, 427 U.S. at 225*.

In *Sandin v. Conner,* the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *515 U.S. at 483*. Applying this test, the Supreme Court concluded that the

prisoner in *Sandin* did not have a protected liberty interest in remaining free of

disciplinary detention or segregation because his thirty-day disciplinary detention,

though punitive, did not present a dramatic departure from the basic conditions of his

sentence.

In the case at bar, the Court finds that Plaintiff has failed to assert a

constitutionally protected liberty interest.  Significantly here, inmates do not possess a

constitutional right to a prison grievance system.  *Jones v. N. Carolina Prisoners' Labor*

*Union, Inc.,* 433 U.S. 119, 137-38 (1977) (Burger, J., concurring); *Massey v. Helman,* 259

F.3d 641, 647 (7th Cir. 2001) ("the existence of a prison grievance procedure confers no

liberty interest on a prisoner."); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994) (same);  *Flick*

*v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (same); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

1988) (same).  In addition, while Plaintiff does allege that he was given 90 days in the

hole for allegedly assaulting his cellmate,[6]  the courts have held that disciplinary

proceedings which result in sanctions of disciplinary segregation for periods of 90 days

or longer do not impose an atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life, and thus do not trigger an inmate's due process

rights.  *See, e.g., Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir.2002) (seven months in

---

[6] Even if Plaintiff was falsely accused of assaulting his cellmate, that does not give rise
to a constitutionally protected liberty interest.   A prisoner does not have a
constitutional right to be free from being falsely or wrongly accused of conduct that
may result in the deprivation of a protected liberty interest.  *Carey,* 2008 WL 724101, at
*8 (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  Thus, where the filing of
false charges results in a period of disciplinary confinement that does not constitute an
atypical and significant hardship sufficient to trigger a liberty interest under *Sandin*, the
failure to provide Plaintiff an opportunity to be heard does not constitute the
deprivation of a constitutional right.  *See Carey, id.*

disciplinary segregation was insufficient to trigger a due process violation); *Griffin v. Vaughn,* 112 F.3d 703, 706-08 (3d Cir.1997) (fifteen months in administrative custody is insufficient to trigger a due process violation); *Crosby v. Piazza*, 465 F. App'x 168, 171-72 (3d Cir. 2012) (placement in RHU for 270 days did not constitute an atypical and significant hardship under *Sandin*); *Williams v. Bitner,* 307 F. App'x 609, 611 (3d Cir. 2009) (90 days in disciplinary confinement did not give rise to a due process liberty interest); *Alford v. Laquise,* No. 3:14cv13, 2014 WL 3368874, *4 (M.D.Pa. July 9, 2014) (Section 1915A screening; inmate's due process claim predicated on a 90-day placement in disciplinary custody was not a sufficient hardship to give rise to a due process claim), *aff'd* 604 F. App'x 93, 94 (3d Cir. 2015); *Evans,* 2013 WL 3049112, at *5 (citations omitted) (Section 1915 screening; 90 days confinement in disciplinary confinement did not violate inmate's due process rights as it did not constitute an "atypical and significant hardship" so as to trigger due process protection).

Thus, assuming Plaintiff's allegation--that he was denied an opportunity to present his side of the story—is true, this does not give rise to a procedural due process violation, as the sole sanction alleged—90 days in the hole—standing alone, does not constitute an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Having failed to implicate a protected liberty interest, the procedural due process protections of the Fourteenth Amendment have not been triggered. Accordingly, the Court concludes that Plaintiff has failed to state plausible

Fourteenth Amendment due process claim and recommends that this claim be dismissed with prejudice.[7]

Before turning to Plaintiff's equal protection claim, one final matter needs to be addressed. Plaintiff has attached to his Complaint an exhibit which lists a number of his personal items, consisting of articles of clothing, food, and books, that he claims were confiscated on 12/10/15 and not returned to him. *See* ECF No. 3-1. Plaintiff makes no allegations regarding the alleged confiscation of his personal property in the body of his Complaint. Moreover, in neither the Complaint nor the attached exhibit, does Plaintiff allege that Sgt. Black confiscated his personal property or that he filed a grievance through the prison grievance system in an attempt to recover his property.

In *Evans,* our sister court in the Middle District aptly set forth the law regarding deprivation of personal property:

> A civil rights claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state. *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981). The United States Supreme Court has extended *Parratt* to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a civil rights claim is not available. *Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984). The federal courts in Pennsylvania have recognized that both the DOC

---

[7] The Court further notes that the loss of a prison job does not give rise to a Fourteenth Amendment due process violation, as Plaintiff has no constitutionally protected interest in maintaining prison employment. *Watson,* 2013 WL 501376, at *6 (citing *James v. Quinlan,* 866 F.2d 627, 629-30 (3d Cir. 1989); then citing *Bryan v. Werner,* 516 F.2d 233, 240 (3d Cir. 1975)) (other citations omitted).

> internal grievance procedure and the availability of a state
> tort suit in state court provide adequate post-deprivation
> remedies so as to satisfy due process requirements under
> *Hudson*. *See, e.g., Edmonds v. Sobina*, 295 F. App'x, 214, 217 n.
> 5 (3d Cir.2008); *Austin v. Lehman*, 893 F.Supp. 448, 454
> (E.D.Pa.1995); *Payton v. Horn*, 49 F.Supp.2d 791, 795
> (E.D.Pa.1999). Consequently, regardless of whether the
> deprivation of property in the instant case was the result of
> intentional or negligent conduct, [plaintiff] may not obtain
> relief via a civil rights complaint if he has adequate
> alternative remedies.

*Evans*, 2013 WL 3049112, at *6.   Plaintiff is housed at SCI Fayette.  Thus, like the plaintiff

in *Evans*, Simpson can assert any claim relating to the deprivation of his personal

property via the DOC's administrative remedy system. He also may assert a loss of

property claim in a Pennsylvania state court.  Since both of these remedies are available

to him, Plaintiff has failed to state a plausible claim of improper deprivation of personal

property.  Therefore, to the extent Plaintiff intended to predicate his due process claim

on the deprivation of personal property, the Court recommends that claim be dismissed

with prejudice for failure to state a claim.

### b.     Equal Protection Claim

In support of his equal protection claim, Plaintiff alleges the U.S. Constitution

guarantees that the government must treat a person or class of persons the same as it

treats other persons or classes in like circumstances, and he was discriminated against

by Major Joseph F. Trempus because he (Plaintiff) is an inmate and Sgt. Black is a

correctional officer, and Major Trempus took Black's side and denied his grievance.

Compl., ECF No. 3 at 4.

As noted above, the Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). *See also United States v. Armstrong*, 517 U.S. 456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

Plaintiff's equal protection claim does not implicate a suspect class, as prisoners are not a suspect class. *Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). Nor does Plaintiff's equal protection claim implicate a fundamental right, e.g., rights which implicate a fundamental human interest, such as the right to vote, the right of association, the right of access to the courts, or any rights of privacy. *See, e.g., Abdul-Akbar*, 239 F.3d at 317 (termination of parental rights and ability to obtain a divorce are fundamental rights); *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 7 (1974) (citations omitted) (fundamental rights guaranteed by the Constitution include voting, the right of association, the right of access to the courts, or any rights of privacy). Consequently, when a plaintiff does not allege membership in a suspect class or interference with a fundamental right, he must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, in order to bring a successful claim for denial of equal protection under the Fourteenth Amendment. *Little*

*v. Terhune,* 200 F. Supp. 2d 445, 450 (D. N.J. 2002) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). Plaintiff appears to acknowledge that rational basis review applies to his equal protection claim.[8]

Therefore, to state an equal protection claim under this theory, "plaintiff must show that he was similarly situated to, and treated differently from other inmates." *Little,* 200 F.Supp. 2d at 451 (citing *Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 424 (3d Cir. 2000); *Johnson v. Horn,* 150 F.3d 276, 284 (3d Cir.1998); *Keenan v. City of Phila.,* 983 F.2d 459, 465 (3d Cir.1992)). *See also Phillips v. County of Allegheny,* 515 F.3d 224, 243 (3d Cir. 2008) ("a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment.") Here, Plaintiff has failed to identify any similarly situated inmate(s) whom Sgt. Black, or other prison officials treated differently. Rather, Plaintiff asserts only that he was discriminated against by Major Joseph F. Trempus because he (Plaintiff) is an inmate and Sgt. Black is a correctional officer, and Major Trempus took Sgt. Black's side and denied his grievance. Plaintiff's allegation amounts to nothing more than a disagreement with Major Trempus's decision regarding his grievance. Thus, having failed to describe any similarly situated inmates who were treated differently, Plaintiff has failed to raise a right to relief under the Equal Protection Clause above the speculative level. *Twombly,* 550 U.S. at 555. Accordingly,

---

[8] Plaintiff alleges that "in today's constitutional jurisprudence, equal protection means that legislation that discriminates must have a rational basis for doing so. . . . The Equal protection clause of the 14th Amendment therefore is a–Provision requiring the states to give similarly situated persons or classes similar treatment under the law." Compl., ECF No. 3 at 4.

the Court recommends that Plaintiff's equal protection claim be dismissed with prejudice.

### D. **Curative Amendment**

The court must allow amendment by the plaintiff in civil rights cases brought under §1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also Day v. Florida,* 743 F.3d 40, 43 (3d Cir. 2014); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

It does not appear that allowing Plaintiff to amend his Complaint would be futile with respect to his First Amendment retaliation claim based on the loss of his prison job or his Eighth Amendment failure to protect claim. Therefore, the Court recommends that Plaintiff be granted leave to amend his Complaint to state a plausible First Amendment retaliation claim based on the loss of his prison job, and a plausible Eighth Amendment failure to protect claim.

On the other hand, it is clear that Plaintiff cannot state either a due process or an equal protection claim under the Fourteenth Amendment, for the reasons set forth above. In addition, Plaintiff's Eight Amendment conditions of confinement claim fails as a matter of law as the alleged unsafe conditions do not rise to the level of an atypical

and significant hardship.  Therefore, it would be futile to allow Plaintiff leave to amend his Complaint as to these claims.  Accordingly, the Court recommends that Plaintiff's Fourteenth Amendment due process and equal protection claims, as well as his Eighth Amendment conditions of confinement claim, be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

III.  **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that Plaintiff's First Amendment retaliation claim, based on the loss of his prison job, and his Eighth Amendment failure to protect claim be dismissed without prejudice, and that Plaintiff be granted leave to file an amended complaint as to those claims.  It is further recommended that Plaintiff's Fourteenth Amendment due process and equal protection claims, as well as his Eighth Amendment conditions of confinement claim, be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto.  Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto.   Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated:  March 25, 2016                              BY THE COURT:

                                                            /s Lisa Pupo Lenihan
                                                         LISA PUPO LENIHAN
                                                         United States Magistrate Judge

cc: Mitchell Simpson
DY – 1141
S.C.I. Fayette
Box 9999
LaBelle, PA  15450 - 0999